NORTHERN UNION GAS CO. v. MAYER et al.

(Circuit Court, S. D. New York. July 29, 1909.)

DEPOSITS IN COURT (§ 10*)—DISPOSITION.
   Where a gas company, ordered to refund to consumers an excess charge, paid the money into court, and a portion thereof remained unclaimed in the hands of a special master, due to consumers whose whereabouts could not be ascertained, the master would be directed to return the balance of the principal, on the gas company giving bond to make payments to persons entitled thereto on their subsequent appearance; the suit being kept alive in the meantime to enable the court to enforce any necessary orders.
   [Ed. Note.—For other cases, see Deposits in Court, Cent. Dig. § 11; Dec. Dig. § 10.*]

In Equity. Application of special master for instructions, upon notice to all parties.

Cortlandt Belts, for complainant.

George S. Coleman, Robert C. Taylor, and Francis K. Pendleton, Corp. Counsel, for defendants.

LACOMBE, Circuit Judge. The special master who was appointed to receive, and was subsequently ordered to refund to consumers, the money deposited by the Northern Union Gas Company, being excess charges over 80 cents per 1,000 feet for gas consumed and paid for, has applied for instructions as to what disposition to make of an unclaimed balance in his hands. It appears that by July 3, 1909, all moneys due to consumers had been repaid, except $24,983.51. Of this sum $910.65 was covered by assignments as to which it had not yet been determined whether assignor or assignee should receive it, and by affidavits of claimants which were not drawn in the proper form, or the validity of which had not been determined. These amounts were by July 23d reduced to $20,924.51 and $571.04, respectively.

Neither the special master nor the gas company has been able, either through the use of the mails or by inquiry, to ascertain the present addresses of those consumers who cannot be found at the places where their payments of overcharges were made. As to prepayment consumers where slot meters were used, all who have made claim have been paid, except where there is some controversy as to assignment or identity, or sufficiency of papers. There is, therefore, in the hands of the master an unclaimed balance of overcharges originally received from this company of $20,924.15. It is to be expected that from time to time belated applications will be made by owners of many of these claims; but no one can tell how long they will delay making their applications. It seems desirable, therefore, to safeguard their rights to these moneys, and at the same time relieve the special master of the further burden and expense of administration of the funds under supervision of the court, which might go on for years in the disbursement of trifling sums. In order to secure prompt payment the special master opened a separate disbursing bureau for refunds to consumers of this company, and so long as it remains

open it will be necessary to maintain its equipment of assistant auditors and clerks to prepare vouchers and checks. This expense should be terminated as soon as conveniently may be. It has been suggested that nothing be done with this unclaimed balance until the money due to consumers of the Consolidated Company shall have been repaid; but there is no reason apparent why this fund which came from consumers of the Northern Union Company should await the disposition of another fund which came from consumers of a different company. All the companies will probably not reach the same situation as that of the Northern Union for several weeks yet. The unclaimed balance should not be hung up unadministered. If the court gives up the administration, it should be taken up elsewhere; for at any time some one may appear to ask for his share, and there should be persons ready to examine, adjust, and pay it promptly. The unpaid balance of the rebates of the Northern Union Gas Company will therefore be turned over to that company upon the following terms:

(a) The court retains the suit still alive, so as to be able to make and enforce such orders as may from time to time be required to secure the proper and equitable disposition of the fund created under the order of June 29, 1906.

(b) The gas company shall execute a bond, with sufficient surety (to be approved by the court), conditioned that to every consumer, or his lawful executors, administrators, or assigns, who may hereafter present to it a claim for repayment of overcharges represented in this fund, within the proper period fixed by the statutes of the state, prompt payment thereof shall be made; provided, that, should the company be satisfied that the claimant is for any reason not entitled to the sum claimed, it shall submit its controversy with him to this court, to be summarily disposed of, without cost to such claimant, if successful. And, in the event of the court's thus summarily deciding that the money is rightfully due to said claimant, the company will promptly pay the same to him.

(c) That it will in like manner pay the various claims, now in controversy before the special master, or in which the necessary papers are being perfected, promptly upon receipt of directions from the court as to whom payment should be made to.

The unclaimed balance thus ordered to be transferred is principal only. It was stated in the memorandum filed February 18th that the expenses of administration might well prove to be so great as practically to exhaust the accumulations of interest. Besides the large number of assignments which have had to be investigated and the many attempts to defraud which have been detected and punished, the work of auditing the claims of individual consumers and drawing the checks to pay them has been most extensive. The several gas companies, as required by the terms of the original order, prepared and delivered to the special master month by month the papers for refund, showing the names and addresses, with amounts and dates of payments of excess. In the aggregate they disclosed over 1,300,000 separate accounts. The work of classifying, auditing, and checking out has progressed more expeditious-

ly than was expected when repayment began; but the cost of administering the fund has been great.

When all who can be found shall have been repaid (it is hoped this will be early in the fall), the special master will file his accounts, and, if there be any balance of interest left over, its disposition can then be considered.